ROBBINS LLP
BRIAN J. ROBBINS (190264)
brobbins@robbinsllp.com
STEPHEN J. ODDO (174828)
soddo@robbinsllp.com
5060 Shoreham Place, Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

*Counsel for Stockholder Jessica McCall
and Additional Counsel for Plaintiffs*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE ALIGN TECHNOLOGY, INC. DERIVATIVE LITIGATION | Lead Case No.: 5:19-cv-00202-LHK |
| _____ | **NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| This Document Relates to: | |
| ALL ACTIONS. | |
| | Hearing Date: April 24, 2024 |
| | Hearing Time: 11:00 a.m. |
| | Courtroom: 5 – 4th Floor |
| | Judge: Hon. Nathanael M. Cousins |

1

## **TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED ...........................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................2

I.      INTRODUCTION ..........................................................................................2

II.     FACTUAL AND PROCEDURAL BACKGROUND............................................3

        A.      Factual Background ................................................................................3

        B.      Procedural Background..........................................................................4

                1.      The Federal Derivative Action.....................................................4

                2.      State Court Actions .....................................................................4

                3.      Related Securities Action.............................................................5

                4.      Settlement Negotiations...............................................................5

III.    TERMS OF THE PROPOSED SETTLEMENT ...............................................6

IV.     LEGAL STANDARDS FOR PRELIMINARY APPROVAL OF SETTLEMENT ..........9

V.      THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL..........10

        A.      The Settlement Confers Substantial Benefits upon Align .....................10

        B.      The Settlement Is the Product of Arm's-Length Negotiations ..............11

VI.     NOTICE TO STOCKHOLDERS ...................................................................13

VII.    PROPOSED SCHEDULE OF EVENTS........................................................14

VIII.   CONCLUSION............................................................................................16

1

**TABLE OF AUTHORITIES**

2

**CASES**                                                                                    **PAGE(S)**

3

*Hanlon v. Chrysler Corp.*,

4
    150 F.3d 1011 (9th Cir. 1998) ...................................................................................10

5

*In re Am. Apparel, Inc. S'holder Litig.*,

6
    No. CV 10-06352 MMM, 2014 WL 10212865 (C.D. Cal. Jul. 28, 2014) ......................11

7

*In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.*,
    No. MDL 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) ...........................................13

8

*In re NVIDIA Corp. Derivative Litig.*,

9
    No. C-06-06110-SBA(JCS), 2008 WL 5382544 (N.D. Cal. Dec. 19, 2008) .....................9

10

*In re OSI Sys., Inc. Derivative Litig.*,
    No. CV142910MWFMRWX, 2017 WL 5642304 (C.D. Cal. May 2, 2017) ...................14

11

12

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .........................................................................................12

13

*In re Priceline.com, Inc. Sec. Litig.*,

14
    No. 3:00CV1884AVC, 2007 WL 2115592 (D. Conn. July 20, 2007) .............................14

15

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)............................................................................11

16

*Maher v. Zapata Corp.*,

17
    714 F.2d 436 (5th Cir. 1983) .........................................................................................9

18

*Mills v. Elec. Auto-Lite Co.*,

19
    396 U.S. 375 (1970)........................................................................................................10

20

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)........................................................................................................13

21

*Officers for Just. v. Civil Serv. Comm'n of S.F.*,

22
    688 F.2d 615 (9th Cir. 1982) ..............................................................................9, 10, 11

23

*True v. Am. Honda Motor Co.*,

24
    749 F. Supp. 2d 1052 (C.D. Cal. Mar. 25, 2009)...................................................9, 10, 11

25

*U.S. v. McInnes*,
    556 F.2d 436 (9th Cir. 1977) .........................................................................................9

26

*Villanueva v. Morpho Detection, Inc.*,

27
    No. 13-CV-05390-HSG, 2015 WL 4760464 (N.D. Cal. Aug. 12, 2015) ........................11

28

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910)............................................................................................9

**STATUTES, RULES & OTHER AUTHORITIES**

Fed. R. Civ. P. 23.1(c) .............................................................................................9

*Manual for Complex Litigation*, §21.632 (4th ed. 2004) ....................................9, 10

1  **TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

2         PLEASE TAKE NOTICE that on April 24, 2024, at 11:00 a.m., plaintiffs Michelle Tran, Jill

3  Dooley, and Christopher Nguyen ("Plaintiffs") will move before the Honorable Nathanael M.

4  Cousins, United States District Court Judge, to grant preliminary approval of the settlement set forth

5  in the Stipulation and Agreement of Settlement and Release dated January 12, 2024 (the "Stipulation"

6  or "Settlement"),[1] and filed herewith (the "Motion").  The Stipulation resolves all derivative claims

7  in the above-captioned stockholder derivative action brought on behalf of Align Technology, Inc.

8  ("Align" or the "Company") (the "Federal Derivative Action"), as well as claims of additional

9  plaintiffs that were brought in related actions in Santa Clara County Superior Court (the "State Court

10  Actions," collectively with the Federal Derivative Action, the "Actions").[2]

11         Plaintiffs' unopposed motion is based on the attached Memorandum of Points and Authorities

12  in Support of Unopposed Motion for Preliminary Approval of Derivative Settlement, the Stipulation

13  and exhibits thereto, the Oddo Declaration, and such additional evidence or argument as may be

14  required by the Court.

---

[1]  Unless otherwise noted, all capitalized terms shall have the same definition as set forth in the Stipulation, attached to Declaration of Stephen J. Oddo in Support of Unopposed Motion for Preliminary Approval of Derivative Settlement ("Oddo Decl.") as Exhibit 1.

[2]  The State Court Actions include: (i) the stockholder derivative action brought by Muhammad Abbas ("Abbas") on behalf of Align, titled *Abbas v. Hogan, et al.*, Case No. 19-CV-346429 (Santa Clara Cnty. Super. Ct.); and (ii) the action filed by Align stockholder Jessica McCall ("McCall"), captioned *McCall v. Align Technology, Inc.*, Case No. 19-CV-360501 (Santa Clara Cnty. Super. Ct.), seeking to compel inspection of Align's books and records, which was dismissed on February 28, 2022. "Settling Plaintiffs" refer collectively to Plaintiffs, Abbas, and McCall.

- 1 -

1

## STATEMENT OF ISSUES TO BE DECIDED

2

3      Whether the proposed Settlement is within the range of possible approval such that notice of

4  the Settlement should be disseminated to Align stockholders and a date set for the Final Approval

   Hearing.

5

## MEMORANDUM OF POINTS AND AUTHORITIES

6  **I.      INTRODUCTION**

7      Plaintiffs respectfully submit this memorandum in support of their motion for preliminary

8  approval of the Settlement of stockholder derivative claims brought on behalf of Align.   The

9  Settlement is the product of extensive, arm's-length negotiations among the Settling Plaintiffs, the

10  Individual Defendants, and nominal defendant Align (collectively, the "Settling Parties").   *See*

11  Stipulation, §II.D.

12      In connection with the Settlement, Align has agreed to adopt and/or maintain several corporate

13  governance reforms that directly address the alleged wrongdoing and will provide long-term,

14  substantial benefits to Align and its stockholders ("Corporate Governance Reforms" or "Reforms").

15  *Id*., §V.A.; *see also* Stipulation, Exhibit A.  The Corporate Governance Reforms include, among other

16  things; (i) adoption of a formal Disclosure Committee Charter to ensure the committee further fulfills

17  its responsibility for oversight of the timeliness and accuracy of the Company's public disclosures;

18  (ii) enhanced Board oversight over the Company's earnings releases and guidance provided to

19  analysts; (iii) appointment of a Global Compliance & Ethics Officer, a Vice President of Global

20  Antitrust & Competition, and a Chief Legal and Regulatory Officer, which will enhance the

21  Company's compliance and oversight over its compliance controls; (iv) adoption of a new Global

22  Code of Conduct and a Global Fair Competition Policy, which include restrictions on certain

23  anticompetitive conduct, and require related training and reporting requirements; and (v) additional

24  reforms to promote director independence and diversity, continuing education, and enhanced growth,

25  development, and retention of the Company's personnel.  *See id.*

26

27

                                          - 2 -

28

1  Settling Plaintiffs' counsel's recommendation that the Court approve the Settlement is based

2  on decades of experience in stockholder derivative litigation, and is informed by their extensive

3  independent investigation; careful review and analysis of public and non-public documents; rigorous

4  evaluation of the strengths and weaknesses of the claims and defenses; thorough analysis of Align's

5  corporate governance and best practices; and careful evaluation of the value of the Reforms.  *See*

6  Oddo Decl., ¶17.

7  At this preliminary approval stage, the Court need only conclude that the Settlement is within

8  the range of what might be found to be fair, reasonable, and adequate, such that notice of the

9  Settlement should be provided to Align's stockholders and the Final Approval Hearing scheduled.

10  The Settlement meets this standard.  Accordingly, Plaintiffs respectfully request that the Court enter

11  the Preliminary Approval Order: (i) granting preliminary approval of the Settlement as set forth in

12  the Stipulation; (ii) approving the form and content of Notice of the Settlement to Current Align

13  Stockholders; and (iii) setting a date for the hearing to consider final approval of the Settlement (the

14  "Final Approval Hearing").

15  ## II.   FACTUAL AND PROCEDURAL BACKGROUND

16  ### A.   Factual Background

17  Align is a global medical device company engaged in the design, manufacture, and marketing

18  of Invisalign® clear aligners and iTero® intraoral scanners and services for orthodontics, restorative,

19  and aesthetic dentistry.  Oddo Decl., ¶2.  This settlement relates to alleged: (i) false and misleading

20  statements and omissions that emphasized an increase in the average selling price ("ASP") of Align's

21  products, while failing to disclose discount programs and promotions that would undermine and

22  reverse this ASP growth and materially impact net income as a result of reduced profit margins;

23  (ii) anticompetitive conduct designed to protect Align's monopolies in the clear aligner and intraoral

24  scanner markets after the Company began losing patent exclusivity for key aspects of its products;

25  and (iii) inadequate internal controls designed to prevent the alleged wrongdoing and ensure the

26  accuracy of the Company's public disclosures.  *Id.*

27

28

- 3 -

1
2

### B.     Procedural Background

#### 1.     The Federal Derivative Action

3  On January 11, 2019, plaintiff Michelle Tran filed a stockholder derivative action, captioned
4  *Tran v. Hogan, et al.*, Case No. 5:19-cv-00202-LHK in the Northern District of California on behalf
5  of nominal defendant Align against the Individual Defendants.  Stipulation, §II.A.  On January 29,
6  2019, plaintiff Jill Dooley filed a factually-related stockholder derivative action in the Northern
7  District of California, captioned *Dooley v. Hogan, et al.*, Case No. 5:19-cv-00525.  *Id.*  On January
8  30, 2019, plaintiff Christopher Nguyen filed a factually-related stockholder derivative action in the
9  Northern District of California, captioned *Nguyen v. Hogan, et al.*, Case No. 5:19-cv-00543.  *Id.*  On
10 February 26, 2019, the Court entered an order consolidating the *Tran*, *Dooley*, and *Nguyen* actions
11 for all purposes, under the new caption *In re Align Technology, Inc. Derivative Litigation*, Lead Case
12 No. 5:19-cv-00202-LHK (N.D. Cal.).  *Id.*

13 On April 10, 2019, the Court entered an order staying the consolidated derivative action
14 pending the outcome of the parallel securities litigation, *SEB Investment Management AB v. Align*
15 *Technology, Inc., et al.*, No. 3:18-cv-06720 (N.D. Cal.), proceeding before Judge Vince Chhabria (the
16 "Securities Litigation").  *Id.*  Following the final resolution of the Securities Litigation (referenced
17 below), the parties to the Federal Derivative Action filed joint status reports before this Court,
18 advising the Court that the parties were engaged in ongoing discussions regarding the possibility of
19 resolution through a settlement.  *Id.*

20 #### 2.     State Court Actions

21 On April 12, 2019, plaintiff Muhammad Abbas filed a factually-related derivative stockholder
22 action on behalf of Align in Santa Clara Superior Court, captioned *Abbas v. Hogan, et al.*, Case No.
23 19-CV-346429.  Stipulation, §II.B; Oddo Decl., ¶5.  On May 16, 2019, the Santa Clara County
24 Superior Court entered an order staying the *Abbas* case in favor of the federal Securities Litigation.
25 *Id.*

26 On December 19, 2019, plaintiff Jessica McCall filed a complaint, captioned *McCall v. Align*

27

28

- 4 -

*Technology, Inc.*, Case No. 19-CV-360501 in Santa Clara County Superior Court, seeking to compel inspection of Align's books and records. *Id.* Prior to filing this complaint, McCall sent Align a demand to inspect its books and records under title 8, section 220 of the Delaware General Corporation Code ("Section 220"). Oddo Decl., ¶6. In May 2020, after filing the *McCall* action, McCall sent Align a second inspection demand. *Id.* In June 2020, McCall amended her complaint to also include her second inspection demand. *Id.* On December 18, 2020, the Santa Clara County Superior Court entered an order overruling the defendants' demurrer to McCall's amended complaint in its entirety. *Id.* The parties thereafter negotiated and agreed upon the scope of documents to be produced in response to McCall's Section 220 inspection demands, and the *McCall* action was later dismissed on February 28, 2022. *Id.*

### 3.    Related Securities Action

The Securities Litigation commenced when the first securities class action was filed in this Court on November 5, 2018. Oddo Decl., ¶7. On September 9, 2020, the Court granted in part and denied in part the defendants' motion to dismiss the Securities Litigation. *Id.* On June 11, 2021, the parties executed a binding term sheet memorializing an agreement in principle to resolve the Securities Litigation. *Id.* On April 28, 2022, Judge Chhabria granted final approval of settlement in the Securities Litigation. Stipulation, §II.C.

### 4.    Settlement Negotiations

On February 16, 2022, stockholder McCall sent a settlement demand to Defendants. Stipulation, §II.D. On May 9, 2022, plaintiffs Michelle Tran, Jill Dooley, and Christopher Nguyen sent a settlement demand to Defendants. *Id*.

On May 26, 2023, after months of hard-fought negotiations, the Settling Parties reached an agreement in principle on the material substantive terms of a global resolution of the Federal Derivative Action and the State Court Actions. *Id*.

Thereafter, the Settling Parties, each represented by counsel, commenced good-faith, arm's-length negotiations regarding an appropriate award of attorneys' fees and expenses to counsel for the

Settling Plaintiffs.  *Id.*  These negotiations culminated in the Settling Parties' agreement that Align would cause its insurers to pay attorneys' fees and expenses totaling $575,000, subject to Court approval.  *Id.*

The Settling Parties then negotiated and finalized the formal Stipulation of Settlement.  *Id.*

**III.     TERMS OF THE PROPOSED SETTLEMENT**

The Settlement addresses the core concerns raised in the Actions and offers Align and its stockholders the substantial benefit of immediate and lasting corporate governance reforms that will provide value to Align for years to come.  *See* Oddo Decl., ¶12; *see also* Stipulation, §V.  The Reforms require that, among other things, Align take the following actions:

- **Disclosure Committee Charter**:  The Company will formalize its management-level Disclosure Committee by adopting a Disclosure Committee Charter.  The Charter will require that the Disclosure Committee, among other things: (i) be comprised of the Chief Financial Officer, Chief Legal Officer, and the EVP Global Human Resources and the head of Investor Relations; (ii) meet quarterly; (iii) evaluate, recommend, and/or oversee procedures and protocols designed to ensure the Company's earnings releases and periodic reports filed with the U.S. Securities and Exchange Commission ("SEC") are accurate and complete, and relevant information is timely reported to the Disclosure Committee; and (iv) oversee or recommend any changes to existing procedures and protocols that are necessary to comply with the above.  Stipulation, Exhibit A, §II.

- **Board Independence**:  The Company increased the number of directors on the Audit Committee by adding an independent director who has expertise in cybersecurity.  *Id*., §III.1.

In addition, the former President and Chief Executive Officer, Thomas M. Prescott, retired from the Board effective May 19, 2021, which increased the percentage of independent directors from 81% to 90%.  *Id*., §XI.

- **Board Training**: The Company will partner with a well-regarded university or outside counsel of its choosing for regular Board trainings conducted at least annually.  *Id*., §III.2.

- 6 -

- **Audit Committee Charter**:  The Company amended its Audit Committee Charter to require that the Audit Committee: (i) review before release the fourth quarter and full year operating results in the Company's earnings release, with particular attention to financial information and any earnings guidance provided to analysts; and (ii) review any public disclosures about the Company's cybersecurity controls and procedures, the Board's cybersecurity expertise, and its oversight of cybersecurity risk.  *Id.*, §V.

- **Compensation Committee Charter**:  The Company renamed its Compensation Committee the Compensation and Human Capital Committee and amended its Charter as follows: (i) the committee shall make recommendations to the Board regarding employee hiring, retention, advancement, engagement, diversity, equity and inclusion, and workplace culture; (ii) the committee's primary goal will be to link the performance and contributions of the Company's executives to the achievement of the Company's strategic goals; (iii) the committee will attempt to promote programs and practices that enhance the growth and development of the Company's personnel; (iv) the committee will continue to make recommendations to the Board periodically regarding the stock ownership guidelines; (v) the committee will continue to periodically review the human capital management strategies, programs and policies, including those regarding recruitment, retention, career development, diversity, equity and inclusion, workplace culture, and employee engagement; and (vi) the committee will continue to periodically review and report to the Board on non-CEO executive development and succession planning.  *Id.*, §VI.

- **Corporate Governance Guidelines**:  The Company amended its Corporate Governance Guidelines to require: (i) when the Nominating and Governance Committee annually reviews the members of the Board, the committee shall also consider gender and ethnic diversity; and (ii) the Compensation and Human Capital Committee will report to the Board on succession planning for executive officers below the level of CEO.  *Id.*, §VII.

- **Enhanced Regulatory Compliance and Compliance Oversight Functions**:  The Company increased the frequency and circumstances under which conduct that may be inconsistent

Lead Case No.: 5:19-cv-00202-LHK
NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

with Align's Global Code of Conduct is brought to the attention of the Board.  Persons making reports under the Global Speak Up Policy may make reports directly to the Audit Committee, and key personnel regularly provide reports on information received through the Global Speak Up Policy to the Audit Committee.  *Id.*, §VIII.1.

The Company also made certain changes to its Executive Management Committee ("EMC"). Most importantly, Align placed its Executive Vice President, Chief Legal and Regulatory Officer, Julie Coletti—who has an extensive background in corporate governance and compliance—on the EMC.  *Id.*, §VIII.2.

Align appointed (i) a Global Compliance & Ethics Officer—a legal counsel whose responsibilities are solely dedicated to compliance and ethics; (ii) a Vice President of Global Antitrust & Competition—a legal counsel with responsibility for antitrust compliance; and (iii) a Chief Legal and Regulatory Officer, who functions as a chief compliance officer.  The Chief Legal and Regulatory Officer and Global Compliance and Ethics Officer report regularly to the Audit Committee of the Board.  *Id.*, §VIII.3.

Align launched a new Global Code of Conduct, including a revised Free and Fair Competition section, which include new language about restrictions on agreements with business partners that limit competition, offering unapproved discounts to or agreements with customers, or influencing prices charged by customers.  The Company further adopted a stand-alone Global Fair Competition Policy, which expanded on the conduct expectations set out in the Global Code of Conduct.  The Company also launched training on the Global Fair Competition Policy.  Any violations of the Global Fair Competition Policy are reported to the Audit Committee.  *Id.*, §VIII.4.

- **Enhanced Disclosure**:  The Company made certain changes to its annual proxy statement, including use of a board diversity matrix and other features to make it more accessible to stockholders.  *Id.*, §IX.

- **Enhanced Insider Trading Controls**:  The Company: (i) expanded training regarding Regulation FD and insider trading; (ii) expanded the notifications it provides regarding the trading

Lead Case No.: 5:19-cv-00202-LHK
NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

1   window; and (iii) adopted additional controls to refine access to material nonpublic information.  *Id.*,

2   §X.

3        The above is a summary of the Reforms, which are detailed in Exhibit A to the Stipulation.

4   Align must maintain these Corporate Governance Reforms for at least three (3) years following the

5   Effective Date of the Settlement.  *Id.*  The substantial benefits conferred on Align as a result of the

6   Reforms merit preliminary approval of the Settlement.

7   **IV.   LEGAL STANDARDS FOR PRELIMINARY APPROVAL OF SETTLEMENT**

8        It is well-settled that "compromises of disputed claims are favored by the courts."  *Williams*

9   *v. First Nat'l Bank*, 216 U.S. 582, 595 (1910);[3] *see also Officers for Just. v. Civil Serv. Comm'n of*

10  *S.F.*, 688 F.2d 615, 635 (9th Cir. 1982) (recognizing that the "settlement process [is] favored in the

11  law"); *U.S. v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977) (explaining that "there is an overriding

12  public interest in settling and quieting litigation").  Settlements are particularly favored "'in class

13  actions and other complex cases [such as derivative actions] where substantial judicial resources can

14  be conserved by avoiding formal litigation.'"  *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-

15  SBA(JCS), 2008 WL 5382544, at *2 (N.D. Cal. Dec. 19, 2008).[4]

16       Rule 23.1 requires the Court to approve any settlement, voluntary dismissal, or compromise

17  of the claims by the parties.  Fed. R. Civ. P. 23.1(c).  "Review of a proposed settlement generally

18  proceeds in two stages, a hearing on preliminary approval followed by a final fairness hearing."  *True*

19  *v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. Mar. 25, 2009) (citing *Manual for*

20  *Complex Litigation*, §21.632 (4th ed. 2004) ("*Manual*")).

21       At the preliminary approval stage, the Court's review of the proposed Settlement is "limited

22  to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

23

24  ───────────────
    [3] Here, as throughout, all emphasis is added and citations and footnotes are omitted unless otherwise

25  noted.

26  [4] *See also Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) ("Settlements of shareholder

    derivative actions are particularly favored because such litigation is 'notoriously difficult and

27  unpredictable.'").

    - 9 -

28

1  overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

2  whole, is fair, reasonable and adequate to all concerned." *Officers for Just.*, 688 F.2d at 625; *accord*

3  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  This is a low threshold, requiring

4  the Court to determine only "whether a proposed settlement is 'within the range of possible approval'

5  and that notice should be sent to" stockholders.  *True*, 749 F. Supp. 2d. at 1063; *see also Manual*,

6  §13.14 ("First, the [court] reviews the proposal preliminarily to determine whether it is sufficient to

7  warrant public notice and a hearing.  If so, the final decision on approval is made after the hearing.").

8  **V.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

9  Plaintiffs respectfully submit that the Settlement is "within the range" of possible approval,

10  and should therefore be preliminarily approved.  Oddo Decl., ¶18.

11  **A.   The Settlement Confers Substantial Benefits upon Align**

12  The Corporate Governance Reforms confer substantial benefits on Align, which merit

13  preliminary approval of the Settlement.  *See supra* section III.  Strong corporate governance is

14  fundamental to a corporation's well-being and success and thus, courts have recognized that corporate

15  governance reforms provide valuable benefits for public companies.  *See Mills v. Elec. Auto-Lite Co.*,

16  396 U.S. 375, 395-96 (1970) ("[A] corporation may receive a 'substantial benefit' from a

17  [stockholders' action], justifying an award of counsel fees, regardless of whether the benefit is

18  pecuniary in nature[,]" because "corporate therapeutics ... furnish a benefit to all shareholders by

19  providing an important means of enforcement of [a corporation's director and officer obligations].").

20  Collectively, the Reforms will provide long-term benefits to the Company and its stockholders

21  by addressing the alleged wrongdoing and strengthening Align's overall corporate governance

22  practices.  Oddo Decl., ¶20.  Among several additional Reforms summarized above, the Reforms

23  address the alleged misstatements and anticompetitive conduct by: (i) enhancing the management-

24  level Disclosure Committee's oversight responsibilities; (ii) enhancing the Audit Committee's

25  oversight over the Company's earnings releases and any earnings guidance provided to analysts;

26  (iii) appointing three key individuals to oversee the Company's compliance and ethics, including legal

27

28

- 10 -

1  counsel with responsibility for antitrust compliance; (iv) improving the policies in the Company's

2  Global Speak Up Policy, including enhanced reporting to the Audit Committee; and (v) launching a

3  new Global Code of Conduct, which includes clear restrictions against certain anticompetitive

4  conduct, as well as a Global Fair Competition Policy and a training program on such policy.  These

5  Reforms, among others, will leave Align as a stronger company going forward.

6  In sum, the substantial and lasting benefits conferred as a result of the Reforms demonstrate

7  that the Settlement is "fair, reasonable and adequate to all concerned[,]" and "within the range of

8  possible approval."  Oddo Decl., ¶21; *Officers for Just.*, 688 F.2d at 625; *True*, 749 F. Supp. 2d. at

9  1063.

10  **B.     The Settlement Is the Product of Arm's-Length Negotiations**

11  Further, a "strong presumption of fairness attaches" to settlements negotiated at arm's-length

12  by experienced and well-informed counsel.  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576

13  (S.D.N.Y. 2008); *see also In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx),

14  2014 WL 10212865, at *8 (C.D. Cal. Jul. 28, 2014); *Villanueva v. Morpho Detection, Inc.*, No. 13-

15  CV-05390-HSG, 2015 WL 4760464, at *6 (N.D. Cal. Aug. 12, 2015) ("'An initial presumption of

16  fairness is usually involved if the settlement is recommended by class counsel after arm's-length

17  bargaining.'").  This presumption applies here because the Settlement was negotiated between

18  experienced counsel possessing a firm understanding of the strengths and weaknesses of the claims

19  and defenses asserted, is the product of significant give and take by the Settling Parties, and was

20  reached after extensive negotiations between the Settling Parties and their respective counsel.  Oddo

21  Decl., ¶22; Stipulation, §II.D.

22  The Settling Parties are represented by zealous and able counsel with extensive experience in

23  complex derivative litigation, and who have unique insight into the legal and factual issues presented.

24  Oddo Decl., ¶23.  In addition, counsel for the Settling Plaintiffs have conducted extensive research

25  and investigation into the Individual Defendants' alleged misconduct and the corresponding alleged

26  damages to the Company.  This investigation included, among other things: (i) reviewing and

27

28

Lead Case No.: 5:19-cv-00202-LHK
NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF DERIVATIVE SETTLEMENT AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

analyzing the Company's public filings with the SEC, press releases, announcements, transcripts of conference calls, and news articles; (ii) reviewing securities analyst, business, and financial media reports about the Company; (iii) pursuing and subsequently reviewing the Company's internal books and records pursuant to Section 220, including filing complaints and briefing a motion to dismiss before eventually obtaining such books and records; (iv) researching the applicable law with respect to the claims asserted (or which could be asserted) in the respective Actions and the potential defenses thereto; (v) researching, drafting, and filing derivative complaints; (vi) researching corporate governance best practices necessary to address alleged internal control weaknesses; and (vii) engaging in settlement discussions with counsel for the Defendants. *Id.* The accumulation of the information discovered through the above efforts permitted counsel for the Settling Plaintiffs to be well-informed about the strengths and weaknesses of the derivative claims and to engage in effective settlement negotiations with Defendants. *Id.*

As a result of those negotiations, Settling Plaintiffs obtained a Settlement that provides substantial benefits to the Company while eliminating the expense, risk, and delay inherent in such complex litigation. *Id.*, ¶24. Although counsel for the Settling Plaintiffs' believe that the derivative claims are meritorious, liability was by no means a foregone conclusion. *Id.* Had Settling Plaintiffs continued to litigate, they would have faced several pre-trial motions designed to eliminate or curtail their claims, including motions to dismiss for failing to adequately allege that demand was futile. *Id.* And significant risks remained in getting past any subsequent motions for summary judgment and obtaining a favorable judgment after trial. *Id.* The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery for Align after years of additional and expensive litigation. *Id.*

Moreover, the Settling Parties' agreement that the Settlement is in the best interests of Align and its stockholders, *see* Stipulation, §§III-IV, further supports that the Settlement is within the range of what may be approved as fair, reasonable, and adequate, and should be granted preliminary approval. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by

- 12 -

competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."); *see also In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992) (finding the belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement).[5]

## VI.    NOTICE TO STOCKHOLDERS

The Settling Parties seek Court approval of the proposed form and manner of notice of the Settlement to Current Align Stockholders.  The proposed notice should be approved because it is reasonably calculated to apprise Align's stockholders of the pendency and terms of the Settlement and afford them an opportunity to present their objections, if any.  Oddo Decl., ¶25; *see also Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

The Settling Parties have agreed that Align shall provide notice of the Settlement to its stockholders by: (a) publishing the Summary Notice of Pendency and Proposed Settlement of Derivative Actions and Final Approval Hearing via press release on a national wire service such as *Investor Business Daily* or *PR Newswire*; (b) filing with the SEC as exhibits to a Form 8-K the long-form Notice of Pendency and Proposed Settlement of Derivative Actions and Final Approval Hearing and Stipulation and the exhibits thereto, or by including a link in Align's next Form 10-Q or Form 10-K to Align's investor regulations website where stockholders can obtain the Notice and Stipulation; and (c) publishing the Notice and Stipulation and the exhibits thereto on Align's investor relations website, which will be maintained there through the date of the Final Approval Hearing.  Stipulation, ¶V.B.2.

---

[5] While the agreed-to Fee and Expense Award is also fair and reasonable, the Court need not address fees until final approval.  Subject to Court approval, Align has agreed to cause its insurers to pay attorneys' fees and expenses to counsel for the Settling Plaintiffs in the amount of $575,000. Stipulation, §V.C.  Counsel for Settling Plaintiffs will provide further information in support of the Fee and Expense Award in their papers in support of final approval of the Settlement.

1    The proposed notice describes in plain English the terms and conditions of the proposed

2    Settlement, including: (i) the facts and considerations that caused the Settling Parties and their

3    respective counsel to conclude that the proposed Settlement is fair, reasonable, adequate, and in

4    Align's best interests; (ii) the procedure for objecting to the proposed Settlement; and (iii) the date,

5    place, and time of the Final Approval Hearing.  Stipulation, Exhibits C-D.

6    The use of publication notice, coupled with an SEC filing and website posting, has been

7    widely used in similar stockholder derivative settlements and approved as meeting due process.  *See,*

8    *e.g.*, *In re Banc of California Inc. Stockholder Derivative Litig.*, Lead Case No. SA CV 19-621-DMG,

9    slip op. at 2 (C.D. Cal. Sep. 27, 2021), Oddo Decl., Exhibit 2 (approving notice by publication in a

10   Form 8-K filed with the SEC, in the national edition of *Investor's Business Daily*, and posted on the

11   company's website); *Kenney v. Gertel, et al.*, Case No. C-12-02268-EJD, slip op. at 2 (N.D. Cal. May

12   3, 2019), Oddo Decl., Exhibit 3 (approving notice by publication in a Form 8-K and posted on

13   company's website); *In re GoPro Stockholder Derivative Litig.*, Lead Case No. 4:18-cv-00920-CW,

14   slip op. at 3 (N.D. Cal. Apr. 1, 2021), Oddo Decl., Exhibit 4 (approving notice by publication in

15   *Investor's Business Daily* and posted on company's website).  In addition, the provision of notice via

16   a 10-Q rather than an 8-K has also been held by courts to satisfy the notice requirement.  *See, e.g.*, *In*

17   *re OSI Sys., Inc. Derivative Litig.*, No. CV142910MWFMRWX, 2017 WL 5642304, at *2 (C.D. Cal.

18   May 2, 2017) (granting final approval where, among other things, notice of the settlement was

19   published in a 10-Q); *In re Priceline.com, Inc. Sec. Litig.*, No. 3:00CV1884AVC, 2007 WL 2115592,

20   at *3 (D. Conn. July 20, 2007) (granting final approval where, among other things, notice of the

21   settlement was published in a 10-Q).

22   Accordingly, the Settling Parties respectfully request that the Court approve the form and

23   manner of Notice as described herein.

24   **VII.    PROPOSED SCHEDULE OF EVENTS**

25   In connection with preliminary approval of the Settlement, the Settling Parties request that the

26   Court set a schedule for: (i) dissemination of notice of the Settlement to Align stockholders; (ii) Align

27

28

- 14 -

stockholders' comments or objections to the Settlement; and (iii) the Final Approval Hearing. Plaintiffs propose the following schedule:

| | |
|---|---|
| Notice published in accordance with the Preliminary Approval Order | 30 calendar days after entry of the Preliminary Approval Order Align will (i) publish the Summary Notice in a national wire service and (ii) publish the Notice, Stipulation, and the exhibits thereto on Align's investor relations website.<br><br>Align will either include as exhibits to a Form 8-K the Notice, Stipulation, and exhibits thereto or in Align's next Form 10-Q or 10-K include a link to Align's investor relations website. |
| Deadline for opening briefs and supporting documents in support of final approval of the Settlement | 35 calendar days before the Final Approval Hearing |
| Deadline for objections to the Settlement | 21 calendar days before the Final Approval Hearing |
| Deadline for responses to stockholder objections | 7 calendar days before the Final Approval Hearing |
| Deadline to file an affidavit or declaration regarding the publication of the Summary Notice, Notice, and Stipulation | 7 calendar days before the Final Approval Hearing |
| Deadline to file any reply papers in support of final approval of the Settlement | 7 calendar days before the Final Approval Hearing |
| Final Approval Hearing | 60 calendar days after Notice is given |

This schedule is similar to those used in other stockholder derivative settlements and provides due process to Align's stockholders with respect to their rights concerning the Settlement. *See, e.g.*, *In re Finisar Corp. Derivative Litig.*, No. C-06-07660-RMW-HRL, slip op. (N.D. Cal. Aug. 15, 2013), Oddo Decl., Exhibit 5; *In re Google Inc. S'holder Derivative Litig.*, No. CV-11-04248-PJH, slip op. (N.D. Cal. Nov. 6, 2014), Oddo Decl., Exhibit 6.

## VIII.   CONCLUSION

The Settlement is an excellent result in light of the risks inherent in the Actions and the substantial cost and complexity if the derivative claims proceeded to trial.   Accordingly, the Settlement is "within the range" of what may be approved as fair, reasonable, and adequate, and should be preliminarily approved.

DATED: March 1, 2024                                    Respectfully submitted,

ROBBINS LLP
BRIAN J. ROBBINS (190264)
STEPHEN J. ODDO (174828)

*/s/ Stephen J. Oddo*
STEPHEN J. ODDO

5060 Shoreham Place, Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com
        soddo@robbinsllp.com

*Counsel for Stockholder Jessica McCall and Additional Counsel for Plaintiffs Michelle Tran, Jill Dooley, and Christopher Nguyen*

THE BROWN LAW FIRM, P.C.
TIMOTHY BROWN
767 Third Avenue, Suite 2501
New York, NY 10017
Telephone: (516) 922-5427
Facsimile: (516) 344-6204
E-mail: tbrown@thebrownlawfirm.net

BRAGAR EAGEL & SQUIRE, P.C.
LAWRENCE P. EAGEL
MELISSA A. FORTUNATO
MARION C. PASSMORE
580 California Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 568-2124
Facsimile: (212) 214-0506
E-mail: eagel@bespc.com
        fortunato@bespc.com
        passmore@bespc.com

*Co-Lead Counsel for Plaintiffs Michelle Tran, Jill Dooley, and Christopher Nguyen*

1653982

- 16 -